**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**UNITED STATES OF AMERICA,**

Plaintiff,

**v.**

**RODRIQUIES EVANS,**

Defendant.

**Criminal Action No. 5:18-CR-14-1
(BAILEY)**

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court upon consideration of

the Report and Recommendation of United States Magistrate Judge James P. Mazzone.

By Local Rule, this action was referred to Magistrate Judge Mazzone for submission of a

proposed report and a recommendation ("R&R"). Magistrate Judge Mazzone filed his R&R

on June 15, 2020 [Doc. 417].  In that filing, the magistrate judge recommends that this

Court deny the defendant's several Motions to Suppress Evidence [Docs. 382, 383, 384],

filed April 24, 2020.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo*

review of those portions of the magistrate judge's findings to which objection is made.

However, the Court is not required to review, under a *de novo* or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or

recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140,

150 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo*

review and the right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); *Snyder v.*

*Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91,

94 (4th Cir. 1984).  Objections to the R&R were timely filed on June 29, 2020 [Doc. 422].

Accordingly, this Court will conduct a *de novo* review of those portions to which objections were made; the remaining portions will be reviewed for clear error.

An evidentiary hearing on the Motions was scheduled, but by agreement of the parties, the issues were submitted to the Court on briefs.

Mr. Evans has been indicted on the following counts: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances (1 count); Distribution of Methamphetamine (2 counts); and Possession with Intent to Distribute Methamphetamine (1 count).  A forfeiture allegation is contained within the Superseding Indictment.

The defendant has filed three separate Motions to Suppress.  The first Motion seeks to suppress evidence obtained from a search of the property located at 555 Eyermann Road, Belpre, Ohio [Doc. 382].  The second Motion [383] seeks to suppress evidence obtained from wiretap communications [Doc. 383].  The final Motion seeks to suppress information obtained from a cell phone [Doc. 384].

"As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence."  *United States v. Kerns*, 2016 WL 5745117, *4 (S.D. W.Va. Sept. 26, 2016) (Johnston, J.) (citing *United States v. Adkinson*, 191 F.Supp.3d 565, 568 (E.D. Va. 2016)) (in turn citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)).

With respect to the search of the Belpre house, the Magistrate Judge recommended denial of the motion in part due to a lack of standing.  The burden is clearly on the defendant to show that he had standing.  "The 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' [*Rakas v.*

2

*Illinois*, 439 U.S. 128, 143 (1978)]. 'In order to demonstrate a legitimate expectation of privacy, [a defendant] must have a subjective expectation of privacy, and that subjective expectation must be reasonable.' *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010) (alteration and internal quotation marks omitted)." *United States v. Ferebee*, 957 F.3d 406, 412 (2020).

> The requirement that the defendant have a reasonable expectation of privacy in the property -- often characterized as whether the defendant has "standing" to challenge the search -- is not jurisdictional, but it is nonetheless a threshold inquiry that is preliminary to and distinct from the question of whether a warrant was required: "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search. . . ." *Byrd v. United States*, —— U.S. ——, 138 S. Ct. 1518, 1530, 200 L.Ed.2d 805 (2018) (emphasis added); *id.* at 1526 ("Whether a warrant is required is a separate question from the one the Court addresses here, which is whether the person claiming a constitutional violation has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." (emphasis added)(internal quotation marks omitted)); *United States v. Bellina*, 665 F.2d 1335, 1339 (4th Cir. 1981) ("[T]he threshold question in every suppression case is the existence of a reasonable expectation of privacy in the area searched." (internal quotation marks

omitted)).  Accordingly, if the individual seeking to challenge a search does
not have a legitimate expectation of privacy in the property or place being
searched, the individual lacks "standing" and the inquiry ends without
consideration of the merits of the search claim.

*United States v. Ferebee*, 957 F.3d 406, 412 (2020).

With regard to standing, at the time of the search, this defendant disclaimed any
knowledge of the owner, had never been to the area before, and had never been to the
property.  These denials are hardly dispositive in light of the evidence in this case.

It is uncontested that defendant did not own or primarily reside at the Eyermann
residence.  Therefore, at the time of the search, defendant was, at best, a visitor at the
Eyermann property.  While a visitor may have a legitimate expectation of privacy at the
home of another, "not every visitor merely present with the consent of the householder has
a legitimate expectation of privacy."  *United States v. Gray*, 491 F.3d 138, 145 (4th Cir.
2007) (citing *Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (internal quotations omitted)).

As noted by Judge Mazzone, the Fourth Circuit has recognized a distinction
between two types of visitors: social guests and business visitors.  The former may have
a legitimate expectation of privacy while the latter does not.  *Gray*, 491 F.3d at 145-46.
In other words, visitors who are present at a residence "essentially . . . for a business
transaction" have no legitimate expectation of privacy in the residence of a third party.
*Carter*, 525 U.S. at 90.  In the instant case, there is no evidence that defendant was a
social guest at the Eyermann residence.  Rather, the evidence indicates that Defendant

4

was present at the Eyermann residence to conduct a business transaction(s), i.e. to sell drugs. *See* [Docs. 382-1 and 406-1].

While, according to the property owner, the defendant was a frequent visitor to the property, the statements of the property owner also confirm that the defendant's purpose in being there was to sell drugs. Based upon the foregoing, this Court agrees with Judge Mazzone that the defendant lacks standing to assert his Fourth Amendment claim with regard to the search of the house.

Even if the defendant were to have standing, the evidence supports the propriety of the search. The defendant contends that there was an insufficient nexus between the alleged criminal activity and the property.

As noted by Judge Mazzone:

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. . . . [I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983) (internal citations and quotations omitted). When considering whether a search warrant is supported by probable cause, the "crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher*

5

*v. Stanford Daily*, 436 U.S. 547, 566 & n.6 (1978)).  "[T]he nexus between

the place to be searched and the items to be seized may be established by

the nature of the item and the normal inferences of where one would likely

keep such evidence. . . . probable cause can be inferred from the

circumstances, and a warrant is not invalid for failure to produce direct

evidence that the items to be seized will be found at a particular location."

*Lalor*, 996 F.2d at 1582.

[Doc. 417 at 6].

In this case the affidavit for the search warrant details statements made by

confidential informants and persons with personal knowledge of the defendant's drug

trade, detailing large shipments and sales of methamphetamine in the Marietta, Ohio, and

Parkersburg, Paden City and New Martinsville, West Virginia areas.  Belpre, Ohio, is

directly across the Ohio River from Parkersburg, West Virginia, while the defendant is from

Columbus, Ohio, two hours away.

The affidavit also detailed that the Columbus, Ohio, police department followed a

vehicle driven by defendant Evans' girlfriend from Columbus to the Eyermann Road house,

whereupon the driver went into the house, stayed 5 minutes, then drove directly back to

Columbus–a four hour round trip.  The defendant was present in the house at the time.

The contents of the affidavit for warrant more than adequately support the inference

that the defendant was trafficking in large amounts of drugs, that he received drugs at the

Eyermann Road house, and that he would have to store the drugs at the house.  The

defendant's history of firearm possession and the statements of the informants also

support the inference that firearms would be found at the house.

6

In addition, this Court finds that the "good faith" exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897 (1993), applies.

For the reasons stated above, the defendant's Motion to Suppress Evidence Obtained from Unlawful Search of Property [Doc. 382] will be denied.

The second Motion to Suppress filed by this defendant deals with evidence of wiretap communications. The defendant contends that the affidavit for the wiretap did not satisfy the requirement of an exhaustion of all other investigative remedies and a finding of "necessity" before any wiretap interception may be granted.

It is well settled that wiretaps should not be "routinely employed as the initial step in criminal investigation." *United States v. Giordano*, 416 U.S. 505, 515 (1974). In *United States v. Smith*, the Fourth Circuit stated:

[T]he burden that these provisions impose upon the government to show the inadequacy of normal investigative techniques is not great, and the adequacy of such a showing is "to be tested in a practical and commonsense fashion," *United States v. Clerkley*, 556 F.2d 709, 714 (4th Cir. 1977) (internal quotations omitted), *cert. denied*, 436 U.S. 930 (1978), that does not "hamper unduly the investigative powers of law enforcement agents." *United States v. Leavis*, 853 F.2d 215, 221–22 (4th Cir. 1988); *see United States v. Depew*, 932 F.2d 324, 327 (4th Cir.), *cert. denied*, 502 U.S. 873 (1991); *United States v. Muldoon*, 931 F.2d 282, 285 (4th Cir. 1991). While the government cannot discharge its burden with "bare conclusory statements that normal techniques would be unproductive," *United States v. Ashley*,

7

876 F.2d 1069, 1072 (1st Cir. 1989), or "mere 'boilerplate recitation of the difficulties of gathering usable evidence,'" *Leavis*, 853 F.2d at 221, it is not required to show that other methods have been "wholly unsuccessful," *Ashley*, 876 F.2d at 1072, or that it has exhausted "all possible alternatives to wiretapping." *Clerkley*, 556 F.2d at 715 (emphasis in original). Instead, it need only present "specific factual information," *Leavis*, 853 F.2d at 222, sufficient to establish that it "'has encountered difficulties in penetrating [the] criminal enterprise or in gathering evidence—to the point where. . . wiretapping becomes reasonable,'" given "'the statutory preference for less intrusive techniques.'" *Ashley*, 876 F.2d at 1072 (quoting *United States v. Abou–Saada*, 785 F.2d 1, 11 (1st Cir.), *cert. denied*, 477 U.S. 908 (1986)); *see Leavis*, 853 F.2d at 222 (that the "extraordinary" and highly "intrusive []" technique of wiretapping is "necessary to probe a [criminal enterprise] that might otherwise have proved impossible to penetrate").

31 F.3d 1294, 1297-98 (4th Cir. 1994).

In the instant case, the application was supported by an approximately fifty-three (53) page affidavit, which included approximately seventy-four (74) paragraphs devoted to demonstrating that less intrusive investigatory techniques had not been successful or were not likely to be successful. Said paragraphs contain a detailed, factual recitation of the various investigative tools used, whether and to what extent these tools were successful, and if not, why they were not successful or likely to be so.

In his R&R, Judge Mazzone cited several specific examples from the affidavit, as follows:

For example, at paragraphs 107-113, at pages 34-36 of the affidavit, physical surveillance efforts made by law enforcement are detailed, including efforts to surveil suspected members of the Elaine Crips Family ("ECF") operation. A traffic-stop of one of the alleged members is detailed, as is the fact that said alleged member could not be detained or searched because there was no probable cause. Efforts to surveil Defendant's apartment are detailed, as well as the difficulties of obtaining information from these efforts given the risk and/or likelihood of detection by the targets of the surveillance.

At paragraphs 114-116, pages 36-38, efforts concerning confidential informants are detailed, including the information obtained therefrom and the limitations thereof. In particular, the affidavit detailed the interactions with the various sources, as well as the inability of the various confidential informants to provide information or access to the leadership of the suspected drug organization. The sources' interactions with leadership were limited, and law enforcement explained that this was common and likely to maintain the secrecy and safety of those at the top of the organization. Such a barrier made it difficult for law enforcement to obtain information regarding the leadership within the organization without compromising safety and the integrity of the investigation.

9

Paragraphs 117-119 at page 38 detail the potential use of undercover agents to infiltrate the suspected drug organization, ultimately discounting this investigatory tactic as too dangerous.  Specifically, it was noted that Defendant showed a cell phone video to a confidential informant that allegedly showed a person being shot in the face.  The confidential informant believed the person in the video who did the shooting was the defendant.

Paragraph 120, parts a-c detailed the use of searches to further the investigation, specifically noting that they had been useful in placing some conspirators in possession of illegal drugs.  This section of the Affidavit detailed several search warrants and the execution of the same.  While noting that they were successful in identifying some conspirators, leading to the seizure of various illegal items, the Affidavit noted the limitations of these warrants to the specific circumstances for which they were authorized, leaving the investigation into the wider distribution ring unaddressed by necessity.

[Doc. 417].

Information of this type continues for another approximately thirty-eight (38) paragraphs and eighteen (18) pages and includes information as to such techniques as trash searches, Grand Jury and/or Administrative Subpoenas, interviews, Pen Register Trap and Trace Information and Toll records, mobile tracking devices, pole cameras, arrests, controlled purchases, phone location information, and financial records investigations.

In addition, this Court finds that the "good faith" exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897 (1993), applies. While the defendant argues that *United States v. Giordano*, 416 U.S. 505, 524-25 (1974), stands for the proposition that the "good faith" exception does not apply where the necessity requirement is not met, this Court does not read *Giordano* to say that. In addition, it is hard to imagine that a 1974 case could anticipate the *Leon* exception, which was not announced until 1993.

This Court finds that the affidavit in support of the wiretap more than adequately satisfies the requirements of 18 U.S.C. § 2518(1)(c). Defendant Rodriquies Evans's Motion to Suppress Evidence of Wiretap Communications [Doc. 383] will be denied.

The final Motion to suppress seeks to suppress any evidence obtained from the electronic surveillance of defendant Evans's cell phone on the basis that the probable cause supporting the warrant was not corroborated. It appears that the defendant's objections do not encompass this warrant, which means that this Court should review for clear error.

Law enforcement officers must generally secure a warrant before conducting a search of a cell phone. *Riley v. California*, 573 U.S. 373, 386 (2014). The data at issue in this case includes real-time cell phone data, or data which could pinpoint defendant's physical location in real-time based upon the defendant's cell phone. With respect to real-time location data, Federal Courts have recognized that probable cause is required before a warrant for such information may be authorized. *United States v. Myles*, 2016 WL 1695076, at * 7 (E.D. N.C. Apr. 26, 2016) ("[w]ith respect to "real-time" location

11

data…the majority of federal courts that have considered the issue have concluded that such information may only be obtained pursuant to a warrant supported by probable cause"). There appears to be no dispute here that probable cause is needed for the warrant at issue to be valid. A review of the affidavit in support of the application for this search warrant reveals that probable cause existed for the issuance of a warrant.

The defendant challenges not whether the contents of the affidavit for warrant were sufficient, but rather complains that the information presented was not sufficiently corroborated. As defendant has correctly observed, "an important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." *United States v. Miller*, 925 F. 2d 695, 698 (4th Cir. 1991). However, police surveillance is not the only means of corroboration available. "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971).

In this case, the information was not from an anonymous tipster. Rather it was from an informant known to the investigators and in custody. The confidential informant did not just admit to cursory or superfluous dealings with members of the suspected drug organization. Rather, the informant admitted to having been a part of the alleged drug operation at issue. The informant detailed a six-month business relationship with defendant, which included but was not limited to information regarding interactions, routine, and schedule. Importantly, the weights of the drugs referenced were not small – this informant admitted to having dealt in terms of ounces rather than grams. Given the extent

12

of the confidential informant's involvement in the alleged drug operation and given the fact that the extent of his involvement was unveiled through his own statements against interest, this Court must agree with Judge Mazzone that the requisite level of corroboration is contained within the subject affidavit.

In addition, this Court would again find that the "good faith" exception to the exclusionary rule established by *Leon* would apply.  This was no cowboy operation.  The agents in this case were extremely careful in the efforts to obtain evidence and to seek multiple warrants.

## CONCLUSION

After careful consideration of the record and the motions, it is the opinion of this Court that the Report and Recommendation **[Doc. 417]** should be, and is, hereby **ORDERED ADOPTED**.  The Objections **[Doc. 422]** are **OVERRULED**.  As such, the Motion to Suppress Evidence Obtained from Unlawful Search of Property **[Doc. 382]**, Defendant Rodriquies Evans's Motion to Suppress Evidence of Wiretap Communications **[Doc. 383]** and Motion to Suppress Evidence Obtained from Unlawful Electronic Surveillance of Cell Phone **[Doc. 384]** are hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** July 23, 2020.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

13